### A. H. WILLIAMS & CO. v. JONES.

1. INJUNCTION—APPEAL.—An interlocutory order restraining a defendant from operating a ginnery, is appealable where it effects the merits, and also under the provisions of 23 Stat., 623.

2. IBID.—A going business concern, before it has been determined that its business is a nuisance, should not be stopped by injunction at the instance of the owner of an adjoining business, he having given no bond, on allegations that damage *may happen* to plaintiff, from its operation.

Before BUCHANAN, J., Williamsburg, September, 1901. Reversed.

Action by A. H. Williams & Co. against Ella F. Jones. From Circuit order restraining defendant from running her ginnery, she appeals.

*Messrs. Wilcox & Wilcox,* for appellant, cite: *The order is appealable:* 23 Stat., 623; *and is an abuse of discretion:* 17 S. C., 411.

*Mr. W. L. Bass,* contra (oral argument).

February 21, 1902.   The opinion of the Court was delivered by

MR. JUSTICE POPE.   The Hon. O. W. Buchanan, as Judge of the third judicial circuit, on the 30th day of September, 1901, on an *ex parte* application by the plaintiffs, granted the following order :

."Upon hearing read the verified complaint in the above stated action, it is ordered, that the defendant above named show cause before me, at Conway, S. C., on Tuesday, October 8th, 1901, at 11 A. M., or as soon as possible thereafter as counsel can be heard, why the order and injunction therein prayed for shall not issue, and that in the meantime the said defendant, her agents and servants, be, and they are hereby, enjoined from maintaining and operating the ginnery mentioned in the complaint in above stated action; and that such return, if any, that said defendant may have to this rule, be served on W. L. Bass, counsel for plaintiffs, at least four days prior to the hearing thereof."

Within the required time the defendant appealed from such order upon the following grounds :

"I. That his Honor erred in granting said order of injunction, in that the complaint on which it is solely based does not state facts sufficient to constitute a cause of action, and it appears on the face thereof that the plaintiffs have no equity.

"(a) Material and necessary allegations thereof are not alleged with sufficient certainty and definiteness; but, on the contrary, are alleged on information and belief only, and the grounds of such belief and sources of information are not disclosed therein.

"(b) It appears on the face thereof that the right of the plaintiffs to the relief sought is at least doubtful, and the existence of the fact of nuisance has never been determined by the verdict of a jury or established by the judgment of a competent Court.

"(c) It appears on the face thereof that the plaintiffs purchased the tobacco warehouse two years after the erection of the ginnery complained of, with the knowledge of its existence, and they cannot now be heard to complain of the natural and usual discomforts of proximity to running machinery to an operating ginnery.

"(d) It appears on the face thereof that the plaintiffs, and those under whom they claim and from whom they purchase, have not used due diligence in seeking the relief asked for; but, on the contrary, it so appears that the plaintiffs, and those from whom they purchased, acquiesced in or permitted the defendant to spend large sums of money in the erection of the ginnery complained of, and in its operation from 1898 to the time of the commencement of this action, and large additional sums in repairing the said machinery preparatory to the commencement of operations for the present season.

"(e) It does appear on the face thereof that the maintenance of the ginnery complained is not a nuisance *per se,* and the alleged threatened injury is not imminent and impending, but, on the contrary, is uncertain, indefinite and doubtful, and in any event is productive of only possible injury.

"(f) It does not appear on the face thereof that the ginnery complained of is in itself a nuisance, but only that in certain contingencies becomes so; and it does not further appear that the right or the fact of nuisance has been decided at law, nor does it further appear that the right that irreparable mischief, injury or damage is imminent and then impending, threatened or probable.

"(g) No fact or circumstance is alleged showing, or tending to show, that the ginnery complained of is a nuisance, or that it is operated otherwise than as cotton gins are usually run, or that any legal right of the plaintiffs is infringed by its maintenance, or that anything had transpired, or that any act has been committed by defendant, or any one on her behalf, since the purchase by plaintiffs of the

said tobacco warehouse, increasing the alleged hazards of the said property of the plaintiffs, or the alleged annoyance to the occupants of the same, or that the circumstances are other than they were on the day the said property was so purchased by the plaintiffs.

"(h) It appears on the face of the complaint that the plaintiffs have adequate remedy, and that the alleged mischief is capable of compensation in damages.

"(i) It does not appear on the face thereof that the defendant is insolvent.

"II. His Honor committed abuse of discretion in granting said order of injunction, and in stopping the operation and maintenance of said ginning plant:

"(a) Without requiring the plaintiffs to give bond.

"(b) In denying in an *ex parte* hearing the right of defendant to use her costly property at a period of the year when only it can be valuable to her, upon allegations in the complaint stated only on information and belief, and which stated no probable act of damage, but only possible discomfort and danger that might ensue to plaintiffs and their patrons in trade, contingent upon the blowing up of a steam boiler and the like.

"(c) In enjoining the prosecution of and destroying one business enterprise, that of ginning cotton, for the benefit of another, that of selling tobacco, upon the idea that the ordinary running of an engine twenty-seven feet away jarred the ground, or that at some future day the boiler might explode and injure some one, and that plaintiffs at some future day might sue and recover judgments therefor, or that the building might burn, said allegations showing no nuisance *per se,* but possible and unusual consequence.

"(d) In enjoining the prosecution of the lawful business of ginning cotton upon the sole allegation, in effect, that it was unpleasant to plaintiff; there being nothing alleged as to defendant's business of an unusual nature calculated to show it to be a nuisance *per se.*

"(e) In effect holding that it is unlawful for defendant

to conduct a ginning business in the vicinity of a tobacco warehouse.

"(f) In enjoining a ginning business because possibly dangerous and inconvenient to a warehouse business, when it appears from allegations in the complaint that subsequent to the establishment of a ginning plant, plaintiffs purchased the warehouse property and voluntarily placed themselves in the location of the alleged danger and inconvenience.

"(g) Because all threatened injuries stated in the complaint are purely imaginary and improbable, because not usually attendant upon the operation of machinery such as described; but are dependent upon mere predictions of accident, improbable, unusual and the product of an oversensitive mind, timid and excitable nature."

This Court has already pronounced its judgment, sustaining the appeal herein and reversing the order issued by Judge Buchanan here appealed from, and all that remains is to give in an opinion our reasons therefor. To do this the more effectually, it will be necessary to embrace the verified complaint upon which alone Judge Buchanan based his order enjoining the defendant from using her property. The complaint, omitting the caption, is as follows:

"The plaintiffs above named, complaining of the defendant, allege:

"I. That at the times hereinafter mentioned the plaintiffs, A. H. Williams and J. A. Green, were and still are copartners in business under the firm name of A. H. Williams & Co.

"II. That since the spring of the year 1900, said plaintiffs have been and still are the owners and lawfully possessed of a certain tract of land in the town of Lake City, in the county and State first above written, upon which lot is a large wooden building erected about the year 1895, and erected for and used as a warehouse for the business of buying and selling leaf tobacco; and was used for such purpose several years before the erection of the Jones ginnery, hereinafter mentioned, and has been used for such purpose continuously

since said plaintiffs became the owners thereof, and that said warehouse, with its appurtenances, consisting of wooden stables, horse lot and pack house, are suitable for and adapted to the purpose for which they were erected and are being used, and are unsuitable for any other purpose.

"III. That the said warehouse property is worth about $2,000, and the business carried on thereat amounts to the buying and selling of about three-fourths of a million pounds of tobacco annually. That during the tobacco season, which coincides throughout almost its entire extent with the ginning season, the value of tobacco in said warehouse and pack house at any time amounts to several thousand dollars, and seldom, if ever, are said houses empty of tobacco. That the carrying of said business requires and invites the presence of a number of persons in said warehouse and pack house at all hours of the day, and the number of persons there present in said buildings lawfully often amounts to fifty or an hundred.

"IV. Upon information and belief that defendant, Ella F. Jones, is the person who erected and operated the ginnery herein mentioned, and that said defendant still owns and operates the same, and that B. Wallace Jones, the husband of defendant, was and still is the agent of defendant in the erection and operating of the said ginnery.

"V. That the said ginnery was erected and set up during· the summer or fall of 1896, and was erected and set up on the lot of land contiguous to the said tobacco warehouse lot, and has since thereon been operated. That the buildings of said ginnery extend to the northern line of plaintiffs' said warehouse lot, and within about twenty-seven feet of said warehouse and within about eight feet of the fence of said horse lot. That the main building of said ginnery which is the one nearest said warehouse is two stories high, and is only a few feet from and directly connected by a wooden roof with the room in which are the steam engine and boiler by which said engine is driven and run. That all of the buildings of said ginnery are clustered closely together; that

they are composed of materials which are naturally highly inflammable; that they were constructed in a careless and negligent manner and are and remain in poor repair, all of which increases to a great extent the liability of said buildings to take fire and be destroyed. That said ginnery is maintained and operated in a careless and indifferent manner; and plaintiffs are informed and believe that the engine and boiler of said ginnery are in bad repair, and that much work upon the same was necessary before said ginnery could be started up the present season, and that there are no appliances or arrangements in or about said ginnery for arresting or extinguishing fires.

"VI. That the said ginnery had not been operated or run since December last until September 25, 1901, and that since said September 25, 1901, said ginnery has been in operation continuously.

"VII. That on November 27, 1900, plaintiffs herein for value purchased the lot of land on which said ginnery is situated, and soon thereafter notified said defendant, Ella F. Jones, through her agent, said B. Wallace Jones, to vacate the said lot and deliver possession of the same to said plaintiffs, on or before January 1, 1901; but defendant failed to comply with said notice; and, in order to forestall and overreach plaintiffs and prevent plaintiffs from securing possession of said lot by ejectment or other proceedings, said defendant, on December 31, 1900, instituted the action now pending in the Court of Common Pleas for the county of Williamsburg, State of South Carolina, entitled 'Ella F. Jones, plaintiff, against A. H. Williams and J. A. Green, copartners as A. H. Williams & Co., C. M. Kelley and O. T. Hall, defendants;' in which action said Ella F. Jones, defendant herein, pretends to set up some claim to the said lot on which said ginnery is situated and which was purchased by plaintiffs as above mentioned; but plaintiffs are informed and believe that said defendant, Ella F. Jones, has no title to said lot nor any valid claim to the same.

"VIII. Upon information and belief that said Ella F.

Jones, defendant herein, plaintiff in the action mentioned in paragraph VII. hereof, has made no effort to bring the said action to trial, and has taken no steps towards bringing said action to trial, since the service of the summons and complaint in said action; but, on the contrary, said Ella F. Jones has repeatedly prevented said action coming to trial, and has obstructed every movement and effort towards bringing said action to trial.

"IX. That upon failure of the defendant herein to comply with the notice to vacate mentioned in paragraph VII. above, the plaintiff herein would have instituted proceedings to secure possession of said lots so purchased as above mentioned, had not said defendant herein instituted the said action on said December 31, 1900.

"X. That on account of the maintenance and operating of said ginnery, insurance upon said warehouse and pack house and also upon the stock of tobacco therein can be gotten only with difficulty, and then only at the highest rates of premium.

"XI. Upon information and belief that the noise and jarring of said ginnery, when in operation, annoys, confuses and impairs the comfort of the persons in said warehouse and pack house as above mentioned.

"XII. That the maintenance and operating of said ginnery endangers the said warehouse property of the plaintiff, and renders the same liable to be damaged or destroyed by fire at any time, and also endangers the stock of tobacco in said warehouse and pack house, and renders the same liable to be damaged and destroyed by fire at any time.

"XIII. That the maintenance and operating of this ginnery endangers the said warehouse property of the plaintiffs, and renders the same liable to be damaged and destroyed by an explosion of the boiler of the said ginnery, and also endangers the lives and bodies of the persons in said warehouse and pack house as aforesaid, and renders the same liable to be destroyed and injured at any time by such explosion of said boiler.

"XIV. That the damages resulting from the noise and

jarring of the said ginnery, as above mentioned, cannot be estimated in dollars and cents, and the probable damage through loss of lives and limbs should said boiler explode would be irreparable.

"XV. That should the said warehouse property be injured or destroyed through or by the maintenance and operating of said ginnery, the damages would be irreparable to plaintiffs, as defendant, Ella F. Jones, is practically insolvent, and a judgment against her would be worthless, plaintiffs are informed and believe; and the damages from increase in insurance premiums on account of the maintenance and operating of said ginnery is also irreparable, as a judgment against defendant would be worthless, plaintiffs are informed and believe.

"Wherefore, plaintiffs demand judgment against the defendant, that an order do issue requiring defendant to enter into bond in the sum of        dollars, with sufficient sureties to be approved by the clerk of the Court for the county of Williamsburg, State of South Carolina, to pay to plaintiffs any amount not exceeding the amount of such bond on any judgments that plaintiffs may recover in an action or actions for damages resulting, or that may result, from the maintenance and operating of the ginnery herein mentioned; and that on the failure of the defendant to make and execute such bond within        days from the date of said order, then in that case that defendant, her agents and servants, be enjoined from maintaining and operating said ginnery; and that in the meantime said defendant, her agents and servants, be enjoined from maintaining and operating said ginnery herein mentioned, and for such other and further relief as to the Court may appear just, together with the costs of this action."

We have been careful to reproduce the entire complaint, which was duly verified, to show the grounds of the plaintiffs' alleged grievance against the defendant. By its terms, it will be observed that the defendant has had her cotton ginnery in operation for three years, and that

her said cotton ginnery was in full operation before the plaintiffs purchased the tobacco warehouse which they now claim that Mrs. Jones endangers by the running of her gins now propelled by steam. That the tobacco warehouse is said to be shaken by the jarring made by the operation of Mrs. Jones' steam ginnery; that the boiler might burst and do great damage to the lives of those persons gathered in the tobacco warehouse of plaintiffs; that fire might be communicated to said tobacco warehouse of plaintiffs by sparks escaping from the steam engine on defendant's lot and the contents of the tobacco warehouse might be destroyed by fire; that the plaintiffs have purchased from a third party, and not from the defendant, Mrs. Jones, the lot of land upon which Mrs. Jones has erected her steam ginnery and its plant, and have demanded of the defendant that she cease to operate the same. Now, the order of the Circuit Judge was made without requiring any bond to indemnify the defendant from any loss by reason of stopping her business, as in the order required. This question arises at the outset: Was the order passed by the Circuit Judge one from which an appeal would lie? We answer, that it was appealable before the act of 1901, 23 Stat., 623—for it involved the merits; and secondly, it was appealable under said act just quoted, for that act provides that the Supreme Court may review "An interlocutory order or decree in the Court of Common Pleas, granting or continuing or modifying or refusing an injunction, or else granting or continuing or modifying or refusing the appointment of a receiver hereafter granted in any action: *Provided,* That the notice of appeal must be given within ten days from written notice of the filing of such interlocutory order or decree, and such appeal shall take precedence in the Supreme Court; and the proceedings in other respects in the Court below shall not be stayed during the pendency of such appeal unless otherwise ordered by the Court below."

The second question arises: Is there merit in the appeal? There is certainly merit in the appeal, because by this order

31—62

the wheels of a going concern are stopped before any nuisance has been determined to exist, because the allegations of the complaint are only that evil results *may happen* from the operation of the steam ginnery by the defendant.

For these reasons, given in brief, we are satisfied that the order appealed from should be reversed, and we have so ordered and adjudged already.